1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN ALAN KING,

11           Petitioner,              No. CIV S-03-1780 MCE DAD P

12      vs.

13   MIKE KNOWLES, Warden,

14           Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on May 24, 2001, in the Sacramento County Superior Court on charges of

19   committing lewd and lascivious acts on a child under the age of fourteen years, in violation of

20   California Penal Code § 288(a).  He seeks relief on the grounds that his trial counsel rendered

21   ineffective assistance.  Upon careful consideration of the record and the applicable law, the

22   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

23   /////

24   /////

25   /////

26   /////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Brian King of five counts of committing lewd and lascivious conduct on a child under the age of 14 years (Pen. Code, § 288, subd. (a)).  In connection with one count, the jury found that he engaged in substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8).

After defendant's motion for a new trial was denied, the court sentenced defendant to state prison for an aggregate term of 14 years. . .

In June 1999, the 11-year-old victim was in the fifth grade at an elementary school in Rancho Cordova.  On the last day of the school year, the 33-year-old defendant, the boyfriend of the victim's mother, was supposed to take the victim to school. Instead, defendant and the victim stayed in Rancho Cordova and spent the night at a Motel 6.  In bed, they touched each other "all over."  Defendant touched the victim's "lower part" with his penis; they did not have sexual intercourse.  The victim "believe[d]" that the very next day defendant drove her to Santa Cruz in a rental car where defendant could do some work for his business of "price comparisons."  That night, they went to a motel in Santa Cruz where they did "[a]bout the same thing" as the previous night.  The victim did not recall the name of the motel but described it as located "right by the boardwalk" on a street "around" the beach. The room had television, a telephone and "messed up" curtains. The next day, the victim thought they stayed in Santa Cruz and spent the night in the same motel.  They touched each other again but did not have sexual intercourse.

The day following, the two returned to Rancho Cordova and spent the night in a motel.  The victim thought it might have been called the "Extended Stay[america]."  This time, besides mutual touching, they had intercourse and "[g]ooey stuff" came out of defendant's penis, which the victim had to wipe off.  The next day, defendant drove the victim to a store near her home and dropped her off.  The victim did not go home.  Instead, she went to a friend's house so that she would not have to face her mother, who was upset because she had been gone for several days.  The day after spending the night at her friend's house, the victim walked toward home but was picked up by the police and taken to a receiving center.

Previously, around Christmas, just before the victim turned 11 years of age, defendant had touched the victim's "lower part" over and under her clothes.  On another occasion, he had taken her to a

---

[1]  The following summary is drawn from the August 7, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-5, filed on December 8, 2003, as exhibit D to respondent's answer.

Days Inn motel near a Target store in Rancho Cordova to spend the night.  They spent time touching each other but did not have sexual intercourse.

The victim did not want to testify against defendant, because she felt sorry for him and she was embarrassed.  He took her to fun places and he never "forced" her to do any of the acts.

A sexual assault examination revealed findings consistent with the victim's claims.  She had a healed "cleft or a notch" on her posterior hymenal rim which indicated "a penetrating injury sometime in the past."

Records from a Motel 6 in Rancho Cordova reflected that defendant checked into the motel on June 11, 1999, gave a Carson City, Nevada, address and claimed that another adult was with him. The motel did not charge extra for children under 17 years of age but did charge extra for each additional adult.

Defendant testified and admitted prior felony convictions for burglary and receiving stolen property.  He denied ever molesting children.  Defendant and the victim's mother began a relationship in 1995.  For three months, defendant, defendant's parents and brother, the victim and her mother and brother lived together in a one-bedroom apartment belonging to defendant's mother.

Defendant admitted checking into the Rancho Cordova Motel 6 on June 11, 1999, with the victim's mother for privacy reasons; he had checked into the same motel on other occasions with the [sic] her and also for business purposes.  He provided documentation showing that he had also stayed at the same Motel 6 four nights in November 2000, one night in August 1999 and two nights in May 1999.

Defendant stayed overnight in Santa Cruz in 1999 four times, twice on business and twice for pleasure, once in February and once in July with the victim's mother and the victim.  One of the Santa Cruz Motels was located on Seaside Avenue across from the Best Western and the other motel was directly across from the roller coaster on the boardwalk.  He denied ever checking into the Extended Stay motel.

Defendant said the victim constantly refused to go to school and the victim's mother condoned her refusal.  Defendant denied that he was supposed to have taken the victim to school and denied taking her to a motel.  He denied having sexual contact with the victim, although he admitted she had sat on his lap a couple of times.  He suggested that she may have had a fantasy about him.

Defendant claimed that, between the alleged events and his arrest a year later, the victim's mother asked him for money.

3

1    Petitioner filed a timely appeal of his conviction in the California Court of Appeal

2 for the Third Appellate District.  (Answer, Ex. A.)  The Court of Appeal affirmed petitioner's

3 conviction in its entirety in a reasoned decision dated August 7, 2002.  On August 27, 2002,

4 petitioner filed a petition for review in the California Supreme Court.  (Answer, Ex. E.)  That

5 petition was summarily denied by order dated October 23, 2002.  (Answer, Ex. F.)

6                                    ANALYSIS

7 I.  Standards of Review Applicable to Habeas Corpus Claims

8    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

9 some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

10 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

11 Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

12 interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

13 Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

14 corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

15 (1972).

16    This action is governed by the Antiterrorism and Effective Death Penalty Act of

17 1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

18 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

19 habeas corpus relief:

20            An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall
21     not be granted with respect to any claim that was adjudicated on
     the merits in State court proceedings unless the adjudication of the
22     claim -

23            (1) resulted in a decision that was contrary to, or involved
     an unreasonable application of, clearly established Federal law, as
24     determined by the Supreme Court of the United States; or

25            (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
26     State court proceeding.

                                        4

1  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3         The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

5  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6  federal habeas court independently reviews the record to determine whether relief is available

7  under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v.

8  Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the

9  merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

10  deferential standard does not apply and a federal habeas court must review the claim de novo.

11  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th

12  Cir. 2002).

13  II.  Ineffective Assistance of Counsel

14         Petitioner's sole claim is that his trial counsel rendered ineffective assistance.

15  Petitioner argues that his trial counsel improperly failed to: (1) investigate petitioner's alibi that

16  he was in Nevada from June 12, 1999 through June 15, 1999; (2) present evidence at trial that on

17  two occasions prior to her police interview the victim denied that petitioner had molested her; (3)

18  present evidence at trial that petitioner and the victim did not stay at the Extended Stay Motel in

19  Rancho Cordova after they returned from Santa Cruz; (4) investigate hotel records in Santa Cruz

20  to determine whether petitioner and the victim had stayed at the hotels and on the dates described

21  by the victim; and (5) investigate evidence that the victim and her mother plotted to falsely

22  accuse petitioner of molesting the victim.  Petitioner also claims that his trial counsel "never

23  spent adequate time with me to go over the facts and determine who the appropriate witnesses

24  were and which supporting documents were necessary."  (Pet. at consecutive p. 8).  Petitioner

25  informs the court that all of these arguments and the documentary evidence in support thereof

26  were presented to the trial court in connection with his motion for new trial.  (Id.)

1          Respondent argues that petitioner's claims 2 and 5, described above, are

2    unexhausted because they were raised for the first and only time in petitioner's motion for new

3    trial.  Generally, a state prisoner must exhaust all available state court remedies either on direct

4    appeal or through collateral proceedings before a federal court may consider granting habeas

5    corpus relief.  28 U.S.C. § 2254(b)(1).  However, a federal court considering a habeas petition

6    may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not

7    "colorable." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir.2005).[2]  See 28 U.S.C. § 2254(b)(2)

8    ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the

9    failure of the applicant to exhaust the remedies available in the courts of the State").  For the

10   reasons discussed below, assuming arguendo that petitioner exhausted claims 2 and 5 in state

11   court, he is not entitled to relief pursuant to § 2254(b)(2).

12          A.  State Court Opinion

13          On appeal, petitioner claimed that his trial counsel rendered ineffective assistance

14   as a result of "the cumulative effect of various acts and omissions."  (Answer, Ex. A at 6.)

15   Specifically, petitioner claimed that his trial counsel improperly failed to investigate evidence

16   that petitioner had an alibi from June 12 through June 15, 1999; failed to request jury instruction

17   CALJIC No. 17.01, which would have informed the jury that each count charged a separate and

18   distinct offense; and failed to investigate the Extended Stay Motel to determine whether

19   petitioner ever stayed there.  (Id. at 14-18.)  The California Court of Appeal addressed each of

20   these arguments at length and rejected them, reasoning as follows:

> After trial, and with retained new counsel, defendant moved for a
> new trial asserting, among other things, ineffective assistance of
> court-appointed counsel, Laurence Smith.  He argued Smith (1)
> failed to present alibi evidence for the period from June 12, 1999,
> through June 14, 1999, when defendant was in Boomtown,

---

[2]  In order to be colorable, a claim must have both legal and factual support, Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir. 1986), and must not be "wholly insubstantial, immaterial, or frivolous."  Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (citations omitted).

Nevada, and the Tahoe area with several people, including the victim and her mother; (2) failed to attack the victim's credibility with her prior statements wherein she denied any inappropriate contact with defendant; (3) failed to present evidence that, although defendant made a reservation in the Extended Stay motel (where the victim claimed they stayed after returning from Santa Cruz) he did not stay there the day of the reservation; (4) failed to present evidence that defendant was not a registered guest at two Santa Cruz motels, which could possibly match the victim's description, on June 12 and 13, 1999; and (5) failed to show that the victim's mother attempted to extort money from defendant and his mother in exchange for influencing the victim's testimony.

A.  Evidence and ruling on the motion in the trial court.

At the hearing on defendant's motion, he presented the following evidence.

Sohail Aziz ran a car rental business.  From June 12 through June 15, 1999, he believed that he rented a van to defendant and defendant's mother who claimed they were traveling to Tahoe, or Reno.  Aziz was unable to find a contract for a vehicle he believed he rented to one of them from June 7 through June 12, although he did find contracts for cars rented to defendant, or his mother, from May 28 to June 4, from June 4 to June 7, and from June 15 through June 23, 1999.

At the direction of defendant's new attorney, a defense investigator visited two Santa Cruz motels, which fit the description given by the victim, the Seaside Lodge on Beach Street and the Carousel Motel on Riverside Avenue.  On June 12 and 13, 1999, the dates listed in the subpoenas, defendant was not a registered guest at either motel.  The investigator was not aware of defendant's description of a Santa Cruz motel on Seaside Avenue.

Defendant's mother, Cheryl Berchtold, claimed that attorney Smith avoided discussing defendant's case with her.  Although Smith never asked Berchtold to document defendant's whereabouts beginning on June 11, his new attorney did.

Berchtold claimed that, during that time period, she and others including defendant, the victim and the victim's mother, went to Reno, Boomtown and the Lake Tahoe area in a vehicle rented from Aziz.  Berchtold had documents showing that she had gambling cards and used them on the June 13, 1999, weekend.  Defendant and the victim's mother also had a card that one of them used on June 13, 1999.  While in Reno on June 13, 1999, the group took a person named Louis Stein to the airport.

Further, Berchtold said one of defendant's receipts for his business shows a return at an Office Depot in Reno on June 13, 1999.

7

Smith initially told Berchtold that she would be a witness but later decided not to call her. In addition, Berchtold claimed she had overheard the victim tell a social worker that defendant had not inappropriately touched her, but Smith did not ask her about the victim's statement.

When Berchtold told Smith that the victim's mother attempted to extort money from her, Smith did not ask for details. Berchtold claimed that she had overheard the victim and the victim's mother "plotting to get money and property" from Berchtold and that the victim's mother had given Berchtold an ultimatum after the charges were filed.

On cross-examination, Berchtold admitted telling a probation officer that the victim had acted in a sexually inappropriate manner with defendant. Initially, Berchtold claimed the victim's mother had told her that the victim had done so but later admitted she witnessed the victim jumping on top of defendant and rubbing against him. Berchtold also claimed she told the probation officer about the victim's conduct in an attempt to "bait" the victim so she would tell the truth. Berchtold admitted telling defendant to avoid being around the victim.

Berchtold provided two "chronologies" of events to Smith. In one chronology, she stated that defendant was going to go to Santa Cruz after dropping off the victim at school, but the victim begged him to take her with him.

Berchtold had reviewed Aziz's car rental records, was unhappy that he was unable to locate the missing contract and told him he "better find it." Berchtold and her family gave Aziz a lot of business.

Berchtold acknowledged that defendant had never lived in Nevada and that he had obtained a Nevada license using a friend's address. She explained defendant's business involved competitive price shopping.

The assistant general manager of "Extended Stay America" on White Rock Road found no record of defendant registering at the motel, although a person with defendant's name made a reservation at some unknown time. The motel changed computer systems in 1999. The assistant general manager was not employed at the motel in 1999 and did not know how records were kept at that time. He claimed, however, that manual records of the motel were now stored "very similar[ly]" to the way they always had been.

Defendant also testified at the hearing. He said he may have made a reservation at Extended Stayamerica but did not recall staying there. He thought he stayed at the Courtyard by Marriott next door. As Berchtold had testified, defendant said he went to Boomtown

and Reno with Berchtold, the victim, the victim's mother, and others, including Louis Stein, in a car rented from Aziz.

Defendant testified that Smith discussed the case in detail with him during the trial only after the victim testified.  Smith never asked about defendant's whereabouts from June 11 to June 14, 1999.  When they went over the police report, it appeared that Smith had not read it and he never asked for defendant's input as to inaccuracies.  Smith did not take notes of their brief conversations.

Defendant testified he provided alibi witnesses to Smith for June 19, 1999.  Based on his review of the police reports, or collected motel receipts, June 19 was the date defendant was focusing on at the time of trial.  Defendant claimed he had an alibi for June 19, because he stayed at a Motel 6 with the victim's mother and another adult female on that date.

Defendant explained his business.  He and others purchased office equipment, found an advertisement for a lower price elsewhere, took the advertisement to the purchase location, and obtained the difference.  They then sold, returned, or exchanged the equipment.  There was a receipt attached to defendant's mother's declaration showing such a transaction in Reno on June 13, 1999.

Defendant admitted traveling to Santa Cruz on occasion for business.  Defendant claimed Smith never asked where defendant spent the night in Santa Cruz.

Defendant asserted that Berchtold unsuccessfully attempted to talk to Smith several times about the case.  Defendant claimed he was present when Berchtold told Smith that the victim and the victim's mother were attempting to extort money from him and Berchtold.

The court verified that no motel receipts for June 19, 1999, were presented at trial.

Defendant admitted he knew before trial that there was a June 11, 1999, Motel 6 receipt, but he claimed he had no idea that he needed an alibi for that night.

Smith also testified at the hearing.  He said he met with defendant on numerous occasions and spoke with Berchtold several times.  He never refused to discuss the case with her.  Although Berchtold provided the chronologies, she never raised a potential alibi and never mentioned Boomtown nor did defendant.  Smith acknowledged that Berchtold claimed the victim's accusations were made after the victim's mother failed to extort money from Berchtold.  Smith testified Berchtold never said the victim actively participated in the attempted extortion, even though Berchtold's chronology said that the victim was acting as her mother's "pawn."

/////

Smith noted that Berchtold had reported seeing the victim touching defendant in a sexually inappropriate manner, but Berchtold never claimed she had reported the touching in an attempt to "bait" the victim.  Smith knew that Berchtold had reported overhearing the victim deny that defendant ever touched her in a sexually inappropriate manner.  Smith also knew that a dependency petition had been filed, that the victim never deemed defendant's conduct inappropriate and that the victim claimed to have enjoyed it.

Smith knew that, on August 2, 1999, the victim stated to Child Protective Services (CPS) that no one had "hurt her or made her feel afraid."  According to CPS records, Berchtold reported she saw the victim rub up against defendant, that he had admitted to Berchtold the victim had given him a hickey, pinched him on the butt, which gave him a "hard-on," and tied his arms to a bed frame and poured hot wax on his chest.

Smith and defendant discussed alibis for June 1999.  Although defendant believed he could provide alibi witnesses such as business associates, he never provided any to Smith.  In any event, Smith opined that an alibi would be difficult, because the charges were alleged to have occurred over a long period of time rather than on any specific date.  Further, Smith was suspicious of defendant's business, because Smith had heard of similar operations that dealt in stolen goods.  Smith believed defendant's business associates would not be good alibi witnesses.  Defendant did not offer any receipts associated with his work and never offered a fictitious name statement.

Because the victim's description of the Santa Cruz motel was nonspecific, Smith did not investigate motels in Santa Cruz.  In any event, defendant admitted going to Santa Cruz with the victim.  He claimed that the victim's mother was with them, and denied that anything inappropriate occurred.  Smith believed it was not necessary to identify the motel.

Smith did not investigate the Extended Stayamerica motel either.  Based on his experience, motel records were unreliable and the lack of a registration record did not necessarily mean defendant did not spend the night.  Smith noted that defendant, in fact, had made a reservation, and the victim's mother found a receipt from Extended Stayamerica that included a handwritten note, "The best time I ever had," apparently written by defendant.  Smith decided to show that defendant, who was essentially homeless, stayed at motels on a regular basis to "defus[e] the significance of the [June 11, 1999 Motel 6] receipt . . . ."

Smith had defendant obtain motel records, because defendant was out of custody and would have an easier time than an investigator obtaining the records.  Defendant gathered records from Motel 6 but not Extended Stayamerica.

Smith decided not to call Berchtold to testify, because she knew about sexually inappropriate conduct between defendant and the victim.

Prior to trial, Smith moved to admit evidence that the victim's mother had attempted to extort money from Berchtold and that the attempt influenced the victim's testimony.  The court had then conducted a hearing at which the victim testified that her mother had not attempted to influence her testimony.  The court excluded any evidence of an attempted extortion by the victim's mother.

Smith took no notes of his interviews with defendant and Berchtold, explaining that he never received any information from them other than defendant's denial of the charges and Berchtold's chronologies.  Smith met one time with each of them in his office, and he met with defendant before and after every court appearance.

Smith knew prior to trial that the June 11 Motel 6 date was important and asked defendant about it.  Defendant thought he stayed there either with the victim's mother, or with some other adult female whose name he did not reveal.  Because the motel receipt listed two adults, Smith thought defendant's claim was corroborated.  When asked about staying in a Santa Cruz motel on June 12 and 13, defendant thought he may have, but if he did the victim's mother was present.

Smith decided the case was one of credibility, not alibi.  He unsuccessfully attempted to contact the victim's mother.  Smith did not have an investigator because he knew of no "loose end[s]."  Smith never had any idea that Berchtold could vouch for defendant's whereabouts from June 11 through June 14, so he never asked her about the time period.  Nor was Smith told about any car rental, or any trip to Boomtown, Reno or Tahoe, or that Louis Stein might be an alibi witness.

In denying defendant's new trial motion, the trial court found:

(1) Smith knew nothing about the Boomtown alibi, because neither defendant nor Berchtold had told Smith about it;

(2) Smith could not be faulted for failing to pursue alibis by defendant's business associates, which had been only vaguely mentioned by defendant, based on the suspect nature of defendant's business and defendant's prior theft-related convictions;

(3) Smith knew nothing about either Aziz or Stein, the other alleged alibi witnesses;

(4) The jury could have concluded that the offenses occurred some time other than June 11 through 14, 1999, because the charges

alleged the offenses occurred between January 1, 1999, through June 30, 1999;

(5) Smith made a valid tactical decision not to call Berchtold to testify based on the CPS report, and because there was no proof that the victim was involved in the victim's mother's alleged plot to extort money;

(6) Smith made a valid tactical choice not to impeach the victim with her statements to CPS that defendant had done nothing wrong, because her prior statements were not inconsistent with her trial testimony. In addition, the victim's prior statements were in the same CPS report that contained Berchtold's statements about the victim's inappropriate conduct and Berchtold's warning to defendant to stay away from the victim;

(7) Smith knew defendant had made at least one reservation at the Extended Stayamerica in Rancho Cordova, that the motel had changed computer systems in 1999, that records showing defendant had stayed there could have been lost, that the victim's mother had seen a receipt from the Extended Stayamerica motel with defendant's handwritten note to the effect it was the best time he ever had, and that defendant's confusion about where he stayed could have been used by the prosecutor to argue that a child would have been even more confused; and

(8) the defense's offer that the motel in Santa Cruz could have been only one of two amounted to "sheer speculation," and in any event, defendant had admitted staying in a Santa Cruz motel with the victim and the victim's mother. The trial court also noted, based on its observations, that Smith was prepared and knowledgeable about the facts of the case.

* * *

Defendant asserts that there are numerous instances of deficient performance by trial counsel, in particular, counsel's failure to investigate the facts. But defendant's complaints on appeal focus on the prosecutor's arguments at the hearing on the new trial motion, which he claims were inaccurate and were adopted by the trial court. Specifically, defendant points to:

(1) the prosecutor's argument at the hearing that it had not been the prosecutor's theory at trial that the lewd conduct occurred on or about June 11, and the prosecutor's argument that the Motel 6 evidence was intended only to show defendant's connection to that motel.

In response to that argument, although acknowledging that the charging document alleged that the lewd conduct occurred between January 1, 1999, and June 30, 1999, defendant asserts that the

12

prosecution adduced evidence at trial that the first instance occurred on the last day of school and presented evidence that defendant stayed at the motel on that date. Defendant therefore argues the prosecution did rely on a theory that part of the misconduct occurred on June 11 and that a failure to investigate into defendant's whereabouts on that day amounted to ineffective assistance.

In closing argument, defendant's attorney pointed out there was no evidence as to when the last day of school was, thus lessening the importance of the June 11 date. At most, the prosecutor argued that the June 11, 1999, Motel 6 receipt "appear[ed] to correspond to the last day of school" but that the victim did not remember what day it was. The prosecutor also claimed that the receipt "appear[ed] to correlate."

Defendant replies this was not the full extent of the prosecutor's closing argument on the subject, noting that the prosecutor referred to the registration itself to argue that it would make sense to have it show two adults to deflect attention from the fact defendant was with a minor. The prosecutor also pointed out that defendant used a Nevada address.

These arguments were, of course, legitimate based on the evidence adduced at trial, that is defendant was familiar with the motel that the victim mentioned and stayed there with someone on June 11, 1999. The offenses were alleged to have occurred between January 1, 1999, and June 30, 1999, so the June 11, 1999, motel receipt was simply some evidence to corroborate the victim's claim that defendant took her to a Motel 6. Contrary to defendant's posttrial position, which was made to elevate the importance of an investigation into the June 11 date, the arguments did not target that date alone as the one on which one of the incidents took place; it could have occurred on another day. An alibi for that date would have been of minimal importance.

Defendant also takes issue with the prosecutor's argument that defendant had presented no evidence at the new trial hearing with respect to the lewd conduct alleged and proved to have occurred around Christmas. Defendant complains that this all-or-nothing approach is contrary to the law, that is each count charges a separate and distinct offense. While we have difficulty following his argument, we suppose he is suggesting that, to the extent the trial court accepted that argument, the trial court was in error.

"As an aspect of the presumption that judicial duty is properly performed, we presume . . . that the court knows and applied the correct statutory and case law (People v. Mack (1986) 178 Cal.App.3d 1026, 1032 [224 Cal.Rptr. 208]) and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be

13

considered in the judicial decisionmaking process.  (citations omitted.)

We are confident the trial court did not rely on any misstatement of the law in ruling on the motion.

As an aside, because the jury was not instructed that each charge stated a different and distinct offense, defendant claims the failure of counsel to request CALJIC No. 17.02 constitutes ineffective assistance of counsel.  Defendant did not assert counsel was ineffective for failure to request CALJIC No. 17.02 in his new trial motion nor does he raise a separate contention of ineffective assistance of counsel on appeal.  In any event, the court did instruct the jury in the language of the information, which stated that each count was a further and separate cause of action and a different offense than the other counts.

Defendant further complains that the prosecutor argued that evidence relating to the absence of a record concerning a stay at the Extended Stayamerica motel was not an issue, because defendant testified he may have stayed there.  Citing Evidence Code section 1272, defendant asserts that the lack of a business record of an event may be admitted when offered to prove the nonoccurrence of the event.  Thus, he argues the absence of a record of defendant's registration at the Extended Stayamerica motel was proof that he did not stay there.

Also on the subject of the Extended Stayamerica motel, he claims the court erroneously stated that there was evidence the records had been lost.  Defendant notes that, although the clerk was not aware of the computer change in 1999, he testified he was also not aware of any records being lost in the change.  Defendant notes there is a difference between a reservation, which defendant admitted, and registration documents showing that he actually stayed at the motel as the victim claimed.  Defendant overlooks the fact that, according to this report, employees of the motel stated to an investigating detective on April 13, 2000, that records, in fact, had been lost in the transition that occurred when the record-keeping practices were changed in 1999.

On this point, that is the failure to present evidence of a lack of registration documents, defendant also challenges the court's conclusion that the main allegation raised in his motion for new trial was that Smith failed to present an alibi defense.  Defendant argues this conclusion "overlook[s] the fact' that the evidence with respect to the Extended Stayamerica motel directly contradicted the victim's testimony.

On the subject of the Extended Stayamerica motel, Smith was entitled to rely on his own experience concerning motel records to judge this point minor, and further Smith, in fact, argued to the jury

that the lack of a record meant there was no corroboration of the victim's claim that defendant had contact with the motel.  We note also that the discovery Smith received prior to trial on defendant's behalf prior to trial [sic] included information from an investigating detective that records of the motel had, indeed, been lost.  The assistant general manager did not testify that records had not been lost, he said only that manual records were kept "very similar[ly]" to the way they always had been.  Finally, we agree with the trial court that introducing the lack of a registration record ran the risk of allowing the prosecution to introduce the Extended Stayamerica motel receipt found by the victim's mother with defendant's handwritten note, "the best time I ever had."  The latter evidence could have been particularly damaging, and in all Smith cannot be justly accused of ineffective assistance of counsel for handling the matter of the Extended Stayamerica motel as he did.

Defendant also complains that the court concluded that, because defendant heard the victim's testimony at trial and did not testify about the Boomtown trip, no ineffective assistance can be shown by failure to produce documentation of the trip.  Defendant suggests that he can answer only questions put to him.  The point is that defendant heard the victim's testimony but failed to mention the trip, or the evidence that defendant presented to prove the trip, to Smith before testifying.  We note that Berchtold never listed the event in her chronology.

Smith cannot be faulted for not knowing about any alibis and alibi witnesses of which he was never told.  Smith made legitimate tactical decisions throughout the course of his defense of this case.

We conclude the trial court properly found that defendant failed to demonstrate that, under an objective standard of professional reasonableness, counsel's performance was in any manner deficient.  Under the circumstances, we need not consider the question of prejudice.

(Opinion at 6-24.)

B. <u>Relevant Legal Standards</u>

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>Id.</u> at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable

15

professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "This includes a duty to . . . investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

16

1   Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

2   adversarial process will not function normally unless the defense team has done a proper

3   investigation."   Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

4   Kimmelman, 477 U.S. at 384).   Therefore, counsel must, "at a minimum, conduct a reasonable

5   investigation enabling him to make informed decisions about how best to represent his client."

6   Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d

7   1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).   On the other hand, where

8   an attorney has consciously decided not to conduct further investigation because of reasonable

9   tactical evaluations, his or her performance is not constitutionally deficient.   See Siripongs II,

10  133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67

11  F.3d 181, 185 (9th Cir. 1995).   "A decision not to investigate thus 'must be directly assessed for

12  reasonableness in all the circumstances.'"   Wiggins, 539 U.S. at 533 (quoting Strickland, 466

13  U.S. at 691).   See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a

14  reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74.   A reviewing court must

15  "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'"   United

16  States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690).

17  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in

18  light of the strength of the government's case.'"   Bragg, 242 F.3d at 1088 (quoting Eggleston v.

19  United States, 798 F.2d 374, 376 (9th Cir. 1986)).   See also Hayes v. Woodford, 301 F.3d 1054,

20  1070 (9th Cir. 2002).

21          C.   Analysis

22          The decision of the California Court of Appeal rejecting petitioner's arguments in

23  support of his claim of ineffective assistance of trial counsel is not contrary to or an unreasonable

24  application of Strickland and should not be set aside.   The state appellate court carefully analyzed

25  all of petitioner's claims and determined that trial counsel's performance was not "outside the

26  wide range of professionally competent assistance."   Strickland, 466 U.S. at 690.   Under the

17

Case 2:03-cv-01780-MCE-DAD   Document 17   Filed 06/11/07   Page 18 of 23

1  circumstances of this case, and for the reasons explained below, that determination was

2  reasonable.

3         1.  Alibi

4        Petitioner claims that his trial counsel rendered ineffective assistance because he

5  failed to investigate petitioner's alibi that he was on a trip to Boomtown, Nevada from June 12,

6  1999 through June 14, 1999.  At the hearing on the motion for new trial, petitioner's trial counsel

7  testified that he did not present evidence that petitioner was in Nevada on those dates because he

8  was never informed about the trip by either petitioner or his mother.  Trial counsel testified that

9  he had "no reason to guess that [petitioner] would have gone to Boomtown that weekend."

10  (Reporter's Transcript (RT) at 385.)  Counsel further testified that "at no time" did petitioner's

11  mother mention a trip to Boomtown and that petitioner never informed counsel that he had a

12  "being out-of-town type of alibi."  (Id. at 372.)  Instead, petitioner told his trial counsel that he

13  "thought" he had an alibi involving "business associates or employees of his in some capacity

14  that were going to establish this alibi."  (Id. at 386.)  However, petitioner never gave counsel

15  "any specific name of somebody that could be a potential alibi witness," nor did he explain

16  "precisely what [the alibi] was."  (Id.)  Trial counsel explained that petitioner simply told him he

17  had not committed the acts alleged in the information.  (Id. at 379.)  Trial counsel therefore

18  concluded that the case did not involve a plausible alibi defense but was a "credibility case."  (Id.

19  at 399.)

20        Trial counsel was entitled to rely on the facts as reported by his client and could

21  not be expected to investigate a factual scenario of which he was completely unaware.  Indeed,

22  the "reasonableness of counsel's actions may be determined or substantially influenced by the

23  defendant's own statements or actions."  Strickland, 466 U.S. at 691.  See Langford v. Day, 110

24  F.3d 1380, 1387 (9th Cir. 1996) (no ineffective assistance for failure to investigate where client

25  failed to tell attorney about relevant facts).  Here, where petitioner did not tell his trial counsel

26  /////

18

1  that he had a specific alibi for June 12, 1999 through June 14, 1999, counsel did not render

2  ineffective assistance because of his failure to investigate any such alibi.[3]

3                    2.  <u>Failure to Present Evidence of Victim's Prior Statements</u>

4           Petitioner also claims that his trial counsel rendered ineffective assistance because

5  he failed to present evidence that on two occasions prior to her police interview the victim denied

6  that petitioner had engaged in inappropriate conduct with her.  However, as discussed in detail by

7  the state appellate court, the victim's statements in this regard were not inconsistent with her trial

8  testimony and were contained in a report which included information damaging to the defense

9  case.  (Opinion at 14; <u>see also</u> RT at 419-21.)  In addition, trial counsel testified at the motion for

10 new trial that he did not want to pursue this area because the victim's statements implied that she

11 "enjoyed the sexual activity" and counsel was aware that a violation of California Penal Code §

12 288 "can take place to satisfy the sexual passions of the child as well as the adult."  (RT at 391.)

13 For all of these reasons, petitioner's trial counsel believed that the victim's statements in this

14 regard did not "help [him] very much as far as constructing a defense."  (<u>Id.</u>)  Under the

15 circumstances, trial counsel's decision not to impeach the victim with her prior statements was

16 not outside the wide range of reasonable professional assistance.

17                   3.  <u>Extended Stay Motel</u>

18          Petitioner next claims that his trial counsel was ineffective in failing to present

19 evidence that petitioner and the victim did not stay at the Extended Stay Motel in Rancho

20 Cordova, as the victim testified.  He notes that an investigator hired by his post-trial counsel

21

22       [3] Trial counsel also testified that he did not believe specific dates were important to this

23 case because the time frames alleged in the information covered a period of six months and, in
   any event, there was some confusion about the date of the victim's last day of school in 1999,

24 thereby creating uncertainty as to the specific date that some of the acts were alleged to have
   taken place.  A review of the record confirms that the information charging petitioner alleged that

25 the offenses took place within an extended period of time covering six months.  (Clerk's
   Transcript on Appeal (CT) at 16-18.)  For this reason, an alibi for a date certain in the middle of

26 June would have been of limited relevance.

1    ascertained that while the motel in question had records indicating that petitioner made a

2    reservation in June, 1999, there were no records indicating that petitioner had "checked in or

3    rented a room."  (Pet. at consecutive p. 7.)  However, as described at length above, there was also

4    evidence in the record that: (1) the motel may have lost some of its records during the change to a

5    new computer system; (2) the victim's mother found a damaging receipt from the motel in

6    question with petitioner's handwritten notation that it was "the best time [he] ever had;" and (3)

7    petitioner did, in fact, contact the hotel in June, 1999.  At the hearing on the motion for new trial,

8    petitioner's trial counsel testified that he "thought about" investigating the records of the

9    Extended Stay Motel but decided against it because he knew about the damaging receipt from

10   that motel; the date and time of the offense were not specifically alleged in the charging

11   information, making any records for a specific date largely beside the point; and it was his

12   experience that motels "rarely keep adequate business records."  (RT at 374, 395.)  Under these

13   circumstances, petitioner's trial counsel made a reasonable tactical decision to simply argue that

14   the prosecutor had failed to establish petitioner ever stayed at the Extended Stay Motel.

15                    4.  Motels in Santa Cruz

16          Petitioner also claims that his trial counsel rendered ineffective assistance because

17   of his failure to investigate hotel records in Santa Cruz to locate evidence indicating whether

18   petitioner and the victim stayed at the hotels mentioned by the victim on the days she described.

19   Petitioner notes that the investigator hired by his post-trial counsel investigated two hotels and

20   determined that petitioner had not stayed in those hotels.

21          The trial court found petitioner's argument in this regard to be "completely

22   without merit."  (RT at 422.)  As noted by that court, the twelve-year-old victim's general

23   description during trial of the motel she thought she stayed in with petitioner "does not support

24   the investigator's sheer speculation as to the motel he thought she might have been referring to."

25   (Id.)  Further, petitioner's trial counsel testified during the motion for new trial that he did not

26   attempt to identify the Santa Cruz motel described by the victim because petitioner "was not

                                              20

1   making the claim that he never stayed in a motel in Santa Cruz with [the victim]," but rather

2   admitted he had stayed in a motel in Santa Cruz with the victim and her mother.  (Id. at 374, 396-

3   97, 399-400.)  Trial counsel also testified that he did not think it was important to pin down

4   whether petitioner had stayed in any particular hotel on any particular date because the Santa

5   Cruz offenses were alleged to have occurred anytime between January 1, 1999 and June 30,

6   1999.  (Id. at 395, 399.)  In light of these factors, trial counsel's decision not to investigate

7   whether petitioner and the victim stayed in Santa Cruz on a date certain at a particular hotel

8   (which may or may not have been the relevant hotel) was not unreasonable.

9            5.  False Accusations

10           Petitioner argues that his trial counsel rendered ineffective assistance when he

11  failed to investigate evidence given by petitioner's mother that the victim and her mother plotted

12  to falsely accuse petitioner of molesting the victim.  However, as noted by the California Court of

13  Appeal, petitioner's mother had no information that the victim was induced by her mother to lie

14  about petitioner's actions, whether to obtain money or for any other reason.  At the motion for

15  new trial, petitioner's trial counsel agreed that "nothing in the discovery indicated that [the

16  victim] herself was involved" in any extortion scheme.  (RT at 378.)  Accordingly, the testimony

17  of petitioner's mother to that effect, even if it was believed by the jury, would have had only

18  limited relevance to the issues at petitioner's trial.

19           In addition, as discussed by both the state trial and appellate courts, counsel's

20  decision not to call petitioner's mother as a trial witness was a reasonable tactical decision.

21  Petitioner's mother had made damaging statements to investigators about petitioner's behavior

22  with the victim which would certainly have been revealed to the jury on cross-examination.

23  Further, "[a]s a matter of trial strategy, counsel could well decide not to call family members as

24  witnesses because family members can be easily impeached for bias."  Bergmann v. McCaughtry,

25  65 F.3d 1372, 1380 (7th Cir. 1995).

26  /////

21

1        6.  <u>Failure to Communicate</u>

2        Petitioner also complains that his trial counsel did not have sufficient contact with

3  him or his mother prior to trial to be able to prepare and present an effective defense.  However,

4  the trial court noted in its ruling on petitioner's motion for new trial that petitioner's trial counsel

5  appeared to have a complete grasp of the facts of the case, that complaints by petitioner's mother

6  to the contrary were not credible, and that trial counsel's records and testimony indicated that he

7  had met with petitioner and his mother several times prior to and during trial to discuss the case.

8  (<u>Id.</u> at 423-24.)  At the hearing on the motion for new trial, petitioner's trial counsel testified that

9  he met with petitioner's mother at his office in order to go over certain documents she wanted

10  counsel to see, that he never refused to see or talk to petitioner's mother about the case, and that

11  he met with petitioner prior to trial and after each court appearance.  (<u>Id.</u> at 370-71, 386-87, 394.)

12  Under these circumstances, the decision of the state appellate court that trial counsel kept in

13  adequate contact with petitioner and was adequately prepared is not unreasonable.

14        For all of the reasons described by the California Court of Appeal, petitioner has

15  failed to demonstrate that his trial counsel's representation in this matter fell below an objective

16  standard of reasonableness.  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's

17  application for a writ of habeas corpus be denied.

18        These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within ten days after service of the objections.  The parties are advised

24  /////

25  /////

26  /////

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: June 8, 2007.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:8:king1780.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26